## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JOHN MICHAEL PEDICONE,<br><br>Debtor. | Chapter 13<br><br>Case No. 21-10384 (BLS) |
| JOHN MICHAEL PEDICONE,<br><br>Plaintiff,<br><br>v.<br><br>AJAX MORTGAGE LOAN TRUST 2018-F,<br>MORTGAGE-BACKED SECURITIES, SERIES<br>2018-F, BY U.S. BANK NATIONAL<br>ASSOCIATION, AS INDENTURE TRUSTEE<br><br>Defendant. | Adv. Proc. No. 21-50760 (BLS)<br><br>Re: Adv. Docket Nos. 1, 6 8, 11, 12, 13 |

Cynthia L. Carroll, Esquire
262 Chapman Road
Suite 108
Newark, DE 19702

*Counsel for Debtor*

Catherine Di Lorenzo, Esquire
Stern & Eisenberg Mid-Atlantic, PC
500 Creek View Road
Suite 304
Newark, DE 19711

*Counsel for Defendant*

### OPINION[1]

Before the Court are a cross-motions for summary judgment. The issue is whether the

Debtor's mortgage can be crammed down, or whether cram-down is barred by § 1322(b) of the

Bankruptcy Code. For the reasons that follow, the Court rules that the Creditor's claim is secured

by the Debtor's primary residence, and thus cannot be crammed down.

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of
Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

## BACKGROUND

This is the Debtor's third bankruptcy case.[2] The current case was filed on February 8, 2021 (the "Petition Date"). The Debtor owns real property located at 301 River Road, Wilmington, Delaware 19809 (the "Property").

The Debtor entered into a home construction loan agreement (the "Loan Agreement") with First Horizon Home Loan Corporation to construct a home on the Property on December 21, 2006. As a condition to the Loan Agreement, the Debtor entered into a promissory note (the "Note") secured by a mortgage in the original principal amount of $229,244. The mortgage includes a Residential Construction Loan Rider (the "Mortgage Rider"). The Loan Agreement was later acquired by Ajax Mortgage Loan Trust 2018-F, Mortgage-Backed Securities, Series 2018-F, by U.S. Bank National Association, as Indenture Trustee (hereinafter, the "AJAX Trust" or "Creditor"). The record reflects that construction on the Debtor's Property was completed long ago. Nothing in the record suggests there is a business being conducted on the Property. It is undisputed that the Property is the Debtor's primary residence.

The Debtor commenced this adversary proceeding and asserts that the Property is worth $170,000, which is substantially less than the mortgage amount. The Debtor filed a plan to strip the mortgage down to the value of the collateral under § 506 of the Bankruptcy Code and the Creditor has objected to the plan.

## PARTIES' POSITIONS

The Debtor contends that, the Mortgage Rider secures more than the residence, since the Mortgage Rider indicates that the collateral for the mortgage includes both real and personal

---

[2] The Debtor previously filed a Chapter 13 case on May 6, 2011 (Case No. 11-11421-BLS) and November 12, 2018 (Case No. 18-12587-BLS).

2

Case 21-10384-BLS    Doc 59    Filed 11/23/21    Page 3 of 9

property. According to the Debtor, the Third Circuit's decision in *In re Scarborough*[3] provides guidance for bifurcating a partially unsecured mortgage lien or cramming down a mortgage to the value of the property where a mortgagee's claim is secured by collateral beyond a debtor's residence.

The Creditor responds that, to the extent the collateral described in the Mortgage Rider goes beyond the primary residence, it falls within the definition of "incidental property." Defendant argues that the Debtor's reliance on *Scarborough* is misguided because that case was commenced four years prior to the effective date of the broader statutory definitions for "incidental property" found under 11 U.S.C. §§ 101(13A) and 101(27B). Thus, the Creditor contends that this is a mortgage secured by the Debtor's primary residence and cannot be crammed down due to the statutory prohibition contained in 11 U.S.C. § 1322(b).

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] An issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

---

[3] *Scarborough v. Chase Manhattan Mortg. Corp (In re Scarborough)*, 461 F.3d 406, 409 (3d Cir. 2006).
[4] Fed. R. Civ. P. 56(a).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses."[6] The movant bears the burden of establishing the absence of a genuine issue of material fact.[7] If the movant is successful, the burden then shifts to the respondent to establish that summary judgment is not warranted.[8] The opposing party must produce specific facts that establish the existence of a genuine dispute.[9] It is not sufficient to defeat a motion for summary judgment for the respondent to merely allege a factual dispute.[10]

Further, the Court must view all facts and draw all inferences in favor of the respondent.[11] A motion for summary judgment may only be denied "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[12] Therefore, the Third Circuit Court of Appeals has held that "in all cases summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law."[13]

## DISCUSSION

The question before the Court is whether the mortgage is secured by the Debtor's primary residence or by collateral beyond the primary residence.[14] Pursuant to 11 U.S.C. § 506(a), the general rule in bankruptcy is that "a claim that is secured by a lien on property is treated as a

---

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[7] *Id.* at 322-23.

[8] *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

[9] *Id.* at 587.

[10] *Anderson*, 477 U.S. at 247-48.

[11] *Id*. at 261 n.2; *Pastore v. Bell Tel. Co. of Pa*., 24 F.3d 508, 512 (3d Cir. 1994).

[12] *Matsushita*, 475 U.S. at 587 (citation omitted).

[13] *Petruzzi's IGA Supermarkets v. Darling-Del. Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

[14] The Creditor has argued in the alternative that the Mortgage Rider was extinguished when the Note was issued. Because the Court finds that the Mortgage Rider does not remove the obligation from the scope of 1322(b), the Court does not reach the Creditor's argument that the Mortgage Rider is no longer operative. *See* Defendant's Reply, D.I. 13, p. 2) ("The Rider, RCLA and Loan Agreement are no longer operative because they are irrelevant. Once [c]onstruction is complete any language related to the construction is moot").

4

secured claim 'only to the extent of the value of the property on which the lien is fixed.'"[15]  The

remainder of that lien is considered unsecured.[16] "[A] claim that is not fully collateralized can be

modified, and the creditor said to be 'crammed down' to the value of the collateral."[17]

Section 1322(b)(2) of the Bankruptcy Code, however, provides an exception to this

general rule. Under § 1322(b)(2), a debtor in a Chapter 13 case is permitted to "modify the rights

of holders of secured claims, other than a claim secured only by a security interest in real

property that is the debtor's principal residence, or of holders of unsecured claims, or leave

unaffected the rights of holders of any class of claims."[18]

In other words, "a debtor cannot change the terms of a mortgagee's rights where those

rights are secured only by the debtor's principal residence."[19] The mortgagee's rights apply to

both the secured and unsecured portions of the debt, therefore "a debtor 'cannot modify the

payment and interest terms for the unsecured component . . . without also modifying the terms of

the secured components.'"[20] "[T]he real property that secures the mortgage must *be only* the

debtor's principal residence in order for the anti-modification provision to apply."[21]

This analysis boils down to the terms of the Mortgage Rider, which provides in relevant

part as follows:

> Any and all buildings, Improvements (provided in the Loan Agreement or
> otherwise), and tenements now or hereafter erected on the Property; any and all
> heretofore and hereafter vacated alleys and streets abutting the Property; easements,
> rights, appurtenances, rents (subject however to any assignment of rents to Lender),
> leases, royalties, mineral, oil and gas rights and profits, water, water rights and

---

[15] *In re Scarborough*, 461 F.3d at 409 (*citing United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239, 109 S.Ct.
1026, 103 L.Ed.2d 290 (1989)); 11 U.S.C. § 506(a)(1).

[16] *Id*.

[17] *Id*. at 410 (*citing* 1st *2nd Mortgage Co. of NJ., Inc. v. Ferandos (In re Ferandos)*, 402 F.3d 147, 153 (3d Cir.
2005)).

[18] 11 U.S.C. § 1322(b)(2).

[19] *Jones v. U.S. Bank, N.A. (In re Jones)*, 828 F. App'x 127, 129 (3d Cir. 2020).

[20] *Id*. (*citing Nobelman v. Am. Savings Bank*, 508 U.S. 324, 331, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)).

[21] *Wissel v. Deutsche Bank Nat'l Tr. Co. (In re Wissel)*, 619 B.R. 299, 312 (Bankr. D.N.J. 2020) (emphasis in
original) (*citing In re Scarborough*, 461 F.3d at 411).

water stock appurtenant to the Property (to the extent they are included in Borrower's fee simple title); any and all fixtures, machinery, equipment, building materials, appliances, and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the Property and all replacements and accessions of them, including, but not limited to, the following items, which are hereby recognized by the parties to this instrument as fixtures: appliances for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air and light; security and access control apparatus; plumbing and plumbing fixtures; refrigerating, cooking and laundry equipment; carpet, floor coverings and interior and exterior window treatments; furniture and cabinets; interior and exterior sprinkler plant and lawn maintenance equipment; fire prevention and extinguishing apparatus and equipment, water tanks, swimming pool, compressor, vacuum cleaning system, disposal, dishwasher, range, and oven, any shrubbery and landscaping; any and all plans and specifications for development of or construction of Improvements upon the Property; any and all contracts and subcontracts relating to the Property; any and all accounts, contract rights, instruments, documents, general intangibles, and chattel paper arising from or by virtue of any transactions related to the Property; any and all permits, licenses, franchises, certifications, and other rights and privileges obtained in connection with the Property; any and all products and proceeds arising from or by virtue of the sale, lease, or other disposition of any of the Property; any and all proceeds payable or to be payable under each policy of insurance relating to the Property; any and all proceeds arising from the taking of all or part of the Property for any public or quasi-public use under any law, or by right of eminent domain, or by private or other purchase in lieu thereof; all building permits, certificates of occupancy, certificates of compliance, any right to use utilities of any kind including water, sewage, drainage and any other utility rights, however arising whether private or public, present or future, including any reservation, permit, letter, certificate, license, order, contract or otherwise and any other permit, letter, certificate, license, order, contract or other document or approval received from or issued by any governmental entity, quasi-governmental entity common carrier, or public utility in any way relating to any part of the Property or the Improvements, fixtures and equipment thereon; all other interests of every kind and character which Borrower now has or at any time hereafter acquires in and to the Property, including all other items of property and rights described elsewhere in this Security Instrument.[22]

Case law and the Bankruptcy Code acknowledge that a mortgage remains within the scope of § 1322 if it is secured by "incidental property." In 2005, Congress clarified the meaning of "debtor's principal residence," a key term in the anti-modification clause.[23] The Bankruptcy

---

[22] Residential Loan Agreement Security Instrument, P. 2, ¶ 8.
[23] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005); 11 U.S.C. § 101(13A).

Abuse Prevention and Consumer Protection Act ("BAPCPA") "defined 'debtor's principal place of residence' and 'incidental property' to include both real and personal property."[24] BAPCPA also defined "incidental property" as it relates to a debtor's principal residence, as:

> (A)  property commonly conveyed with a principal residence in the area where the real property is located;
> (B)  all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
> (C)  all replacements or additions.[25]

Looking at provision 8 of the Mortgage Rider, the Court concludes that the Mortgage Rider provides for a lien on a residence and "incidental property" of a typical nature such as fixtures, additions, appliances, and any other property that has a direct connection with the real estate. The Debtor relies heavily on *Scarborough*, which the Court does not find persuasive. At the time *Scarborough* was decided, the changes to the definitions of "debtor's principal residence" and "incidental property" had not yet gone into effect.[26] The narrowly constrained definition of the term "incidental property" applied in *Scarborough* is not supported by the revised definition that governs this dispute.

Case law teaches that under the Bankruptcy Code, "fixtures" fall within the definition of "incidental property."[27] Pursuant to the Code, "fixtures," are incidental property that are part of and included with a debtor's principal residence.[28] "[T]he inclusion of 'replacements and additions' as security corresponds directly to § 101(27B)(C), which identifies 'replacements and

---

[24] *Id.*; *see In re Wissel*, 619 B.R. at 312; *see also McDonald v. Wells Fargo Fin.*, Nos. 07-11721, 08-1028, 1, 2008 Bankr. LEXIS 1556, at *2 (Bankr. W.D. Pa. May 30, 2008) ("[S]ince Congress chose to define all 'incidental property' as included in the 'debtor's personal residence' and all residences as being included in the term 'real property,' Congress has effectively broadened the definition of real property for the purpose of implementing § 1322(2))").
[25] 11 U.S.C. § 101(27B).
[26] *In re Wissel*, 619 B.R. at 301.
[27] 11 U.S.C. § 101(27B).
[28] *In re McDonald*, 2008 Bankr. LEXIS 1556, at *3.

additions' as incidental property."[29] While the term "improvements" does not explicitly appear in § 101(27B), courts have found that it [improvements] also represent incidental property.[30]

The Mortgage Rider grants Defendant a security interest in all of the Debtor's primary residence and all "*[i]mprovements* (provided in the Loan Agreement or otherwise), . . . easements, appurtenances, rents, leases . . . any and all *fixtures*, machinery, equipment, building materials, appliances. . ." "now or hereafter erected on the Property. . ."[31] Each of these items fall squarely within the definition of "incidental property," as defined in § 101(27B). The Court notes that the Mortgage Rider contains a long list of possible collateral. For example, it includes mineral rights, licenses, franchises, and contract rights. Nothing in the record indicates that any of these non-typical categories of collateral are actually present on the Property or otherwise available to secure the Creditor's claim. At argument, the parties agreed that construction on the Property had been completed long ago, and that there were no features (such as a business facility) or other aspects of the Property that would be inconsistent with a single-family residential home. The Court finds that the anti-modification provision of §1322(b)(2) precludes cramming down the value of the secured claim.

## **CONCLUSION**

For the foregoing reasons, the Debtor's Cross-Motion is denied, and the Defendant's Motion for Summary Judgment is granted. Section 1322(b)(2) prohibits a modification where the lender's claim is secured only by a lien on the debtor's principal residence. The Court finds that the mortgage is secured by the Debtor's primary residence and therefore cannot be crammed down.

---

[29] *In re Wissel*, 619 B.R. at 318.
[30] *Id.* at 319.
[31] Residential Loan Agreement Security Instrument, P. 2, ¶ 8 (emphasis added).

The parties shall confer and submit an appropriate Order consistent with this Opinion within seven (7) days of the date hereof.

BY THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:    November 23, 2021
          Wilmington, Delaware